**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BABATUNDE SHODOLA, | Case No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT AND OTHER EQUITABLE RELIEF** |
| I.Q. DATA INTERNATIONAL, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

## I.    Parties, Jurisdiction, and Venue

1.    Plaintiff, Babatunde Shodola ("Babatunde"), is a natural person who has resided in Chicago, Illinois, at all times relevant to this action.

2.    Defendant, I.Q. Data International, Inc. ("I.Q. Data"), has been a Washington Corporation that maintained its principal place of business in Bothell, Washington at all times relevant to this action.

3.    Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq*.

4.    Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## II.    Background Facts

### A.    Babatunde's Account Background

5.    Prior to August 1, 2023, Babatunde had been renting an apartment in Chicago, Illinois (the "Apartment").

1

6.      The building in which the Apartment was located was managed by Pangea Real Estate ("Pangea").

7.      On or about August 1, 2023, Babatunde confirmed with a Pangea representative that he had moved out of the Apartment and had turned in his keys.

8.      At the time Babatunde moved out of the Apartment, he did not owe a balance on his rent, nor did he owe any additional charges or fees related to the Apartment.

**B.      I.Q. Data's Attempts to Collect a Debt from Babatunde**

9.      On or around August 11, 2023, I.Q. Data sent a collection letter to Babatunde (the "August 11 Collection Letter") in which I.Q. Data identified a debt that Babatunde purportedly owed to "7254 SOUTH UNIVERSITY (IL)."  A copy of the August 11 Collection Letter (with Babatunde's current address redacted) is attached hereto as **Exhibit A**.

10.      The August 11 Collection Letter provided, in part:

**Our information shows:**

Our Babatunde, 7254 SOUTH UNIVERSITY (IL), has advised us the notification of the Statement of Deposit Account has been mailed.  As of this date, they have not received your full payment.

| | | | |
|---|---|---|---|
| As of 08/07/23, you owed: | | $ | 301.31 |
| Between 08/07/23 and today: | | | |
| You were charged this amount in interest: | + | $ | 0.00 |
| You were charged this amount in fees: | + | $ | 0.00 |
| You paid or were credited this amount toward the debt: | - | $ | 0.00 |
| **Total amount of the debt now:** | | **$** | **301.31** |

Ex. A.

2

11.     The August 11 Collection Letter also provided, in part:

**How can you dispute the debt?**

- **Call or write to us by 09/21/23, to dispute all or part of the debt.**  If you do not, we will assume that our information is correct.

- **If you write to us by 09/21/23**, we must stop collection on any amount you dispute until we send you information that shows you owe the debt.  You may use the form below or write to us without the form.  You may also include supporting documents.

Ex. A.

12.     The August 11 Collection Letter did not disclose that interest was accruing on the alleged debt that I.Q. Data claimed Babatunde owed.

13.     Based on the information provided in the August 11 Collection Letter regarding how Babatunde was permitted to dispute the alleged debt, Babatunde believed that:

a.      he had until September 21, 2023 to pay the alleged debt identified in the August 11 Collection Letter without the amount of the debt increasing due to interest accumulating or other fees being charged;

b.      a telephone call to I.Q. Data was a sufficient means of notifying I.Q. Data that Babatunde disputed that he owed the alleged debt; and

c.      once Babatunde disputed the debt (by telephone or in writing), I.Q. Data would no longer assume that Babatunde owed the debt and would investigate whether the debt was, in fact, owed.

14.     After receiving the August 11 Collection Letter, Babatunde spoke with I.Q. Data and advised the representative with whom he spoke that he did not owe the debt.

15.     Thereafter, Babatunde checked the "Resident Portal" for tenants of the building in which he rented the Apartment and confirmed that he owed $0.00 related to the Apartment.

16.     On or about September 6, 2023, I.Q. Data reported to at least one credit reporting agency ("CRA") an "open balance" in the amount of $305 that Babatunde purportedly owed to 7254 SOUTH UNIVERSITY IL (identified as "Original creditor").

17.     Even according to I.Q. Data's records, Babatunde did not owe $305.

18.     I.Q. Data did not report the debt as disputed.

19.     Thereafter, on or about September 7, 2023, I.Q. Data sent another collection letter to Babatunde (the "September 7 Collection Letter") in which I.Q. Data identified the same debt that Babatunde purportedly owed to "7254 SOUTH UNIVERSITY (IL)."  A copy of the September 7 Collection Letter (with Babatunde's current address redacted) is attached hereto as **Exhibit B**.

20.     The September 7, 2023 Collection Letter was sent only **27 days** after the August 11 Collection Letter had been sent.

21.     The September 7 Collection Letter provided, in part:

**Our information shows:**

You have a remaining balanced owed to 7254 SOUTH UNIVERSITY (IL) from applying to, cosigning for, or residing in a rental unit, or from a related surety bond.

| | | | |
|---|---|---|---|
| As of 08/07/23, you owed: | | $ | 301.31 |
| Between 08/07/23 and today: | | | |
|    You were charged this amount in interest: | + | $ | 1.28 |
|    You were charged this amount in fees: | + | $ | 0.00 |
|    You paid or were credited this amount toward the debt: | - | $ | 0.00 |
| **Total amount of the debt now:** | | **$** | **302.59** |

Ex. B.

4

22.     The September 7 Collection Letter also provided, in part:

**How can you dispute the debt?**

- **Call or write to us by 10/18/23, to dispute all or part of the debt**.  If you do not, we will assume that our information is correct.

- **If you write to us by 10/18/23**, we must stop collection on any amount you dispute until we send you information that shows you owe the debt.  You may use the form below or write to us without the form.  You may also include supporting documents.

Ex. B.

23.     Although the September 7 Collection Letter identified that some interest had accrued since August 7, 2023, it did not disclose whether interest was continuing to accrue on the alleged debt that I.Q. Data claimed Babatunde owed.

24.     Babatunde was surprised that interest had been charged on the alleged debt I.Q. Data was seeking to collect and confused as to the basis on which such interest had been charged.

25.     In addition, Babatunde was confused and felt misled by I.Q. Data's continued efforts to collect the alleged debt after he disputed the debt in the manner permitted by I.Q. Data because a simple phone call to the original creditor would have confirmed that Babatunde did not owe the debt.

26.     Based on the information provided in the September 7 Collection Letter regarding how Babatunde was permitted to dispute the alleged debt, Babatunde believed that:

   a.     he had until October 18, 2023 to pay the alleged debt identified in the September 7 Collection Letter without the amount of the debt further increasing due to interest accumulating or other fees being charged; and

b. once Babatunde disputed the debt (by telephone or in writing), I.Q. Data would <u>no longer assume</u> that Babatunde owed the debt and would investigate whether the debt was, in fact, owed.

27. After receiving the September 7 Collection Letter, Babatunde spoke with I.Q. Data and advised the representative with whom he spoke that he did not owe the debt.

28. On or about November 18, 2023, I.Q. Data reported to at least one credit reporting agency ("<u>CRA</u>") an "open balance" in the amount of $305 that Babatunde purportedly owed to 7254 SOUTH UNIVERSITY IL (identified as "Original creditor").

29. I.Q. Data did not report the debt as disputed.

30. On or about November 28, 2023, Babatunde called I.Q. Data and advised the representative with whom he spoke that he did not owe the debt.

31. During the call, Babatunde explained to the I.Q. Data representative that he had explained to I.Q. Data multiple times that he does not owe the alleged debt.

32. The I.Q. Data representative responded, among other things, that I.Q. Data's records continued to indicate that the debt was owed.

33. I.Q. Data repeatedly failed to take reasonable (indeed, *de minimum*) steps to verify with 7254 SOUTH UNIVERSITY (IL) whether Babatunde, in fact, owed the debt after Babatunde notified I.Q. Data that he did not owe the debt.

## III. Article III Standing

34. One of the bases on which Babatunde seeks relief against I.Q. Data is that I.Q. Data was aware that Babatunde disputed the alleged debt and that I.Q. Data nonetheless failed to accurately report to one or more CRAs that the alleged debt was disputed.

35.     Such a claim, in the context of an FDCPA violation, is analogous to a common law claim of defamation and sufficiently alleges a concrete harm to establish Article III standing. *See Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146, 1153 (7th Cir. 2022) (Article III standing existed where debt collectors should have known that debts were disputed, but failed to report them to credit reporting bureaus as disputed).

36.     In the context of an FDCPA violation, such Article III standing exists, even though the inaccurate reporting to a CRA was not disseminated to potential creditors. *Id.*

## COUNT ONE

### Violation of the Fair Debt Collection Practices Act – 15 U.S.C. § 1692g

37.     Babatunde re-alleges and incorporates by reference Paragraphs 5 through 33 above as if fully set forth herein.

38.     Under the FDCPA, a "consumer" is a natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).

39.     Under the FDCPA, a "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).

40.     Under the FDCPA, a "debt collector" is, among other things, "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

41.     I.Q. Data regularly uses instrumentalities of interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  As such, I.Q. Data is a "debt collector" under the FDCPA.

42.     At all relevant times, I.Q. Data has alleged that Babatunde is obligated to pay money related to the Apartment, which Babatunde had rented for personal and household purposes.  As such, Babatunde is a "consumer" and her alleged obligation to pay the alleged Apartment-related charges is a "debt" under the FDCPA.

43.     Thus, the FDCPA applies to I.Q. Data's attempt to collect the debt purportedly owed by Babatunde.

44.     FDCPA § 1692g provides, in part:

(a)     Notice of debt; contents

>   Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing --
>
>       (1) the amount of the debt….

15 U.S.C. § 1692g(a)(1).

45.     Under this provision, if a debt collector is attempting to collect a consumer debt, including interest that continues to accrue on the debt on a daily basis, the debt collector must disclose the fact that such interest is accruing in its written communications pursuant to § 1692g(a). *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, 214 F.3d 872, 875-76 (7th Cir.2000).

46.     In *Miller*, the court provided language designed to provide debt collectors with a "safe harbor" to comply with this disclosure obligation.   However, the exact language provided in *Miller* was not (and is not) required.

47.     Instead, all that is required is that the debt collector disclose that interest is accruing in a manner that is "accurate and …not obscure[d] by adding confusing other information (or misinformation)." *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 368 (7th Cir. 2018).

48.     Here, I.Q. Data failed to disclose in either the August 11 Collection Letter or the September 7 Collection Letter that interest was accruing on a daily basis on the debt it was attempting to collect from Babatunde.

49.     Thus, I.Q. Data violated FDCPA § 1692g.

WHEREFORE, Babatunde prays that the Court enter judgment in his favor and against I.Q. Data for:

        a.     Actual damages, statutory damages, costs, and reasonable attorney fees pursuant to 15 U.S.C. § 1692k; and

        b.     Such other relief as the Court may deem just and equitable.

## COUNT TWO

### Violation of the Fair Debt Collection Practices Act – 15 U.S.C. § 1692e

49.     Babatunde re-alleges and incorporates by reference Paragraphs 5 through 33 and Paragraphs 38 through 48 above as if fully set forth herein.

50.     FDCPA § 1692e provides, in part:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(2) The false representation of -

* * *

(A) the character, amount, or legal status of any debt; or

(B) any services rendered or compensation which may be lawfully received by any debt collecor for the collection of a debt.

* * *

> (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

15 U.S.C. §§ 1692e(2) and 1692e(8).

51.     Here, Babatunde was confused and misled as to:

      57.     the actual amount of the debt I.Q. Data was claiming he owed;

      58.     whether interest was accruing on the alleged debt.

52.     Thus, I.Q. Data violated FDCPA § 1692e(2).

53.     In addition, I.Q. Data knew or should have known that the amount of the debt it reported to at least one CRA was not $305.

54.     I.Q. Data also knew or should have known that the debt was disputed.  However, I.Q. Data reported the debt to at least one CRA without noting the dispute.

55.     Thus, I.Q. Data violated FDCPA § 1692e(8).

WHEREFORE, Babatunde prays that the Court enter judgment in his favor and against I.Q. Data for:

      a.     Actual damages, statutory damages, costs, and reasonable attorney fees pursuant to 15 U.S.C. § 1692k; and

      b.     Such other relief as the Court may deem just and equitable.

## COUNT THREE

### Violation of the Fair Debt Collection Practices Act – 15 U.S.C. § 1692d

56.     Babatunde re-alleges and incorporates by reference Paragraphs 5 through 33 and Paragraphs 38 through 48  above as if fully set forth herein.

57.     Section 1692d of the FDCPA prohibits a debt collector from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d.

57.     In order to establish a violation of Section 1692d of the FDCPA, a consumer need not prove intentional conduct by the debt collector. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2nd Cir. 2010); *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774 (7th Cir. 2013) ("[Plaintiff] points to no evidence in the record regarding [Defendant's] intent, which is just as well, because intent is irrelevant" in a § 1692d claim).

58.     "Instead, applying an objective standard, as measured by the 'least sophisticated consumer,' the consumer need only show that the likely effect of the debt collector's communication or conduct could be construed as harassment, oppression or abuse." *See Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 721 (S.D. Tex. 2012).

59.     Nevertheless, a debt collector's intent to violate the FDCPA may be inferred by its maintenance of policies and procedures which, in themselves, violate the FDCPA. *See Anchondo v. Anderson, Crenshaw & Associates, L.L.C.*, 256 F.R.D. 661, 671 (D.N.M. 2009).

60.     Indeed, "company policy can be just as much a violation of [the FDCPA] as the rogue act of an individual employee." *Kromelbein v. Envision Payment Sols., Inc.*, No. 3:11–CV–1598, 2013 WL 3947109, at *7 (M.D. Penn. Aug. 1, 2013) (citing *Edwards v. Niagara Credit Sol., Inc.*, 586 F. Supp. 2d 1346, 1354 (N.D. Ga. 2008) (awarding maximum damages in part because conduct was company policy, thereby making it routine and frequent).

61.     "'If anything, a company policy that violates the FDCPA is a *more egregious transgression* because it indicates endemic, rather than isolated, disregard for debtor rights.'"

11

*Thomas v. LVNV Funding, LLC*, No. 21 CV 1948, 2023 WL 8544083, at \*4 (N.D. Ill. Dec. 11, 2023) (quoting *Kromelbein*, 2023 WL 3947109, at \*7) (emphasis added).

62.    Here, the allegations in the Paragraphs incorporated into this Count by reference demonstrate, among other things, that I.Q. Data:

   a.    failed to disclose that interest was accruing on the alleged debt it was seeking to collect, which confused and misled Babatunde as to the amount of the debt;

   b.    failed to report to at least one CRA that the debt was disputed, which I.Q. Data knew or should have known was false;

   c.    failed to note in its records that Babatunde had disputed the debt, which resulted in, among other things, continued inaccurate reporting of the debt to at least one CRA;

   d.    failed to take reasonable steps to investigate or validate the debt after Babatunde notified I.Q. Data that he did not owe the debt.

63.    I.Q. Data's conduct was in accordance with its policies and procedures.

64.    The natural consequence of I.Q. Data's conduct, as well as its policies and procedures, was to harass, oppress, or abuse any person in connection with the collection of a debt.

65.    Thus, I.Q. Data violated FDCPA § 1692d.

WHEREFORE, Babatunde prays that the Court enter judgment in his favor and against I.Q. Data for:

   a.    Actual damages, statutory damages, costs, and reasonable attorney fees pursuant to 15 U.S.C. § 1692k; and

   b.    Such other relief as the Court may deem just and equitable.

## **JURY DEMAND**

66.    Babatunde demands a trial by jury.

Date:   January 19, 2024                                RESPECTFULLY SUBMITTED,

/s/ *David M. Menditto*
David M. Menditto
MENDITTO LAW PLLC
14425 S. 52nd East Ave.
Bixby, Oklahoma 74008
(t) (918) 404-0670
(e) david@mendittolaw.com

Jeffrey S. Hyslip, Esq.
Hyslip Legal, LLC
207 S. Harrison Street, Suite A
Algonquin, IL 60102
(t) 614-362-3322
(e) jeffrey@hysliplegal.com

*Attorneys for Plaintiff, Babatunde Shodola*